UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BERNARD BROOKS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RAYMOND ANDREWS, et al.,<br><br>　　　　Defendants.<br>_____/ | CASE NO. 1:03-CV-06106-AWI-SMS-P<br><br>ORDER STRIKING PLAINTIFF'S SURREPLY<br><br>(Doc. 114)<br><br>ORDER DISMISSING <u>BIVENS</u> CLAIMS AGAINST DEFENDANT GEO, GRANTING DEFENDANTS' MOTION TO DISMISS DEFENDANTS KROGER AND CALABRESE, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON PLAINTIFF'S EIGHTH AMENDMENT AND STATE LAW TORT CLAIMS<br><br>(Doc. 93)<br><br>ORDER REQUIRING DEFENDANTS ANDREWS, RINSON, AND JOHNSON TO FILE A MOTION FOR SUMMARY JUDGMENT ADDRESSING PLAINTIFF'S EQUAL PROTECTION CLAIM WITHIN FORTY-FIVE DAYS |

I.　　Defendants' Motion to Dismiss and for Summary Judgment, and Dismissal of Bivens Claims Against GEO

　　A.　　Procedural History

　　Plaintiff Steven Bernard Brooks ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides for recovery of money damages against federal actors, and pursuant to California tort law. This action is proceeding on Plaintiff's amended

complaint, filed on April 22, 2004, against Defendants Andrews, Global Experts in Outsourcing Corporation (GEO), Calabrese,[1] Kroger, Johnson, and Rinson[2] ("Defendants") on Plaintiff's Eighth Amendment, Equal Protection Clause, intentional infliction of emotional distress, and negligence per se claims.[3]

On August 1, 2005, Defendants filed a motion to dismiss or in the alternative for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 56. (Docs. 93, 95.) Plaintiff filed an opposition on November 17, 2005, and Defendants filed a reply on December 23, 2005.[4] (Docs. 90-94.) Plaintiff filed a surreply on January 18, 2006. However, neither the Federal Rules of Civil Procedure nor the Local Rules provides for a surreply. Although the Court has discretion to request a surreply or grant leave to file a surreply, it has done neither in this instance and the surreply will not be considered by the Court.[5] Defendants' motion was deemed submitted upon the filing of the reply. Local Rule 78-230(m).

B.    Dismissal of Bivens Claims Against Defendant GEO

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court shall dismiss at any time if the Court determines that there exists a failure to state a claim upon which relief may be granted. "Leave to amend should be granted [only] if it appears . . . that the plaintiff can correct the defect." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted).

Plaintiff may not recover damages against private corporations pursuant to Bivens. Correctional Serv. Corp. v. Malesko, 534 U.S. 61, 63 (2001). Because Plaintiff's Bivens claims

///

---

[1] Identified as Calabrise in the amended complaint.

[2] Identified as Rison in the amended complaint.

[3] Defendants Harvey, Haro, and Erlewine were dismissed from this action on September 28, 2005, pursuant to Plaintiff's notice of voluntary dismissal. (Doc. 104.)

[4] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in orders filed on January 14, 2004, and January 10, 2005. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Docs. 9, 52.)

[5] As discussed in subsection F, the Court will not consider Defendants' equal protection argument, raised by Defendants for the first time in their reply. Thus, declining to consider the surreply will not deprive Plaintiff of his right to respond to that argument.

against GEO, a private corporation, fail as a matter of law, the claims shall be dismissed, with prejudice.

   C. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants move for the dismissal of Defendants Kroger and Calabrese on the basis that the Court lacks personal jurisdiction over them. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing that the Court has personal jurisdiction. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-801 (9th Cir. 2004). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986); Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977). The plaintiff must "only make a prima facie showing of jurisdictional facts through the submitted materials," if the trial court's ruling is based solely upon a review of affidavits and discovery materials. Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1970). "In determining whether [plaintiff] has met this burden, uncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted). "If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues," at which the plaintiff must establish personal jurisdiction by a preponderance of the evidence. Data Disc, 557 F.2d at 1285.

In the absence of specific statutory provision, federal courts apply the personal jurisdiction laws of the state in which they are situated. See T.M. Hylwa, M.D., Inc. v. Palka, 823 F.2d 310, 312 (9th Cir. 1987). Pursuant to Cal. Civ. Proc. Code § 410.10, California's long-arm statute reaches as far as the Due Process Clause permits. "Since California's jurisdictional statute is coextensive with federal due process requirements, the jurisdictional inquiries under state law and federal due process merge into one analysis." Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). "We are not bound by state cases, although they may be considered persuasive authority." Data Disc, Inc.

v. Systems Technology Associates, Inc., 557 F.2d 1280, 1286 n.3 (9th Cir. 1977). "A state may exercise either general or specific jurisdiction over a defendant. If a defendant's activities within the forum state are 'continuous and systematic' or 'substantial,' the state has a sufficient relationship with the defendant to assert general jurisdiction. If, however, a forum state cannot assert general jurisdiction over the defendant, it may still assert specific jurisdiction depending on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action." Lake v. Lake, 817 F.2d 1416, 1420-21 (9th Cir. 1987). "To the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." International Shoe Co. v. State of Wash., 326 U.S. 310, 319 (1945).

"The standard for establishing general jurisdiction is fairly high, and requires that the defendant's contacts be of the sort that approximate physical presence. Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citations omitted).

For specific jurisdiction, there is a three part test: "1) the nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be *reasonable*." Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991) (emphasis in original). "When a court is exercising specific jurisdiction over a defendant, arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987) (citations omitted).

///

"The purposeful availment standard requires more than foreseeability of causing injury in another state. Rather, the foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. The purposeful availment prong prevents defendants from being haled into a jurisdiction through random, fortuitous, or attenuated contacts." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 560 (9th Cir. 1995). "[O]rdinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985) (citations omitted). The second prong requires that the contacts relied on for personal jurisdiction actually relate to the cause of action. MGM Studios Inc. v. Grokster, Ltd., 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) ("Contacts with a forum state are relevant for purposes of specific jurisdiction only if they are sufficiently related to the cause of action.....Thus, if Plaintiffs' claims would have arisen notwithstanding certain contacts, those contacts are not relevant to the jurisdictional analysis."). "But for" causation is all that is required since "A restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction." Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir. 1990) rev'd on other grounds, 499 U.S. 585 (1991). Once a court has found purposeful availment, the reasonableness of jurisdiction is presumed. Sher v. Johnson, 911 F.2d 1357, 1364 (9th Cir. 1990). The burden is then shifted to the defendant to show "the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

Notwithstanding these requirements, the Ninth Circuit has stated that a more "flexible approach" may be appropriate: "Jurisdiction may be established with a lesser showing of minimum contacts if considerations of reasonableness dictate. Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." Ochoa v. J.B. Martin & Sons Farms, 287 F.3d 1182, 1189 n.2 (9th Cir. 2002). Overall, "[q]uestions of personal jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness and fairness must be decided on a case-by-case basis." Wells Fargo & Co.

v. Wells Fargo Express Co., 556 F.2d 406, 426 (9th Cir. 1977) (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952)).

In this instance, Defendants Calabrese and Kroger work and reside in Florida. Defendant Calabrese is the President and Chief Operating Officer of GEO, and Defendant Kroger is the Vice President of Medical Services for GEO. Defendant Kroger oversees the medical services provided by GEO, including the drafting and implementation of medical policy and procedures for GEO.

Plaintiff contends that general jurisdiction is appropriate because Defendants are responsible for implementing policies which govern the medical and dental care of inmates at TCI. Plaintiff further contends that Defendants' conduct in creating and implementing policies that are in effect at TCI is sufficient to afford the Court special jurisdiction.

Plaintiff's conclusory argument is unpersuasive. Plaintiff has made no showing that Defendants' conduct approximates any sort of physical presence in California. Defendants are employees of GEO, and work and reside in Florida. This is insufficient to establish general jurisdiction.

With respect to specific jurisdiction, being employed by a corporation and drafting policies for that corporation which will affect institutions such as that where Plaintiff is currently housed are insufficient to establish that Defendants purposefully availed *themselves* of the privilege of conducting activities in California. Accordingly, the Court finds that Defendants Calabrese and Kroger are entitled to dismissal from this action.

    D.    Motion for Summary Adjudication on Eighth Amendment Claim

        1.    Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

        2.        Summary of Relevant Allegations Set Forth in Plaintiff's Amended Complaint

Plaintiff is an inmate housed at Taft Correctional Institution ("TCI") in Taft, California. In his amended complaint, Plaintiff alleges that pursuant to Bureau of Prisons ("BOP") Program Statement 6005.5, BOP-housed inmates receive root canals and apioectomies on all treatable/salvageable teeth. Plaintiff alleges that pursuant to GEO/TCI policy 514.1, root canals on back teeth and apiectomies on any teeth are precluded, and only extractions are allowed under the policy, regardless of the salvageability of the teeth.

Plaintiff alleges that on April 16, 2002, he was informed by a TCI dentist that he was in urgent need of an apiectomy on tooth #5, below an abscess that had formed. Plaintiff alleges that on April 3, 2003, after he complained of severe pain and an abscessed, swollen right jaw, Dr. Liu, a TCI dentist, determined that Plaintiff was in urgent need of a root canal on tooth #30. Plaintiff alleges that as late as July 9, 2003, Dr. Liu informed him that his teeth could be saved by an apiectomy and a root canal, but that the TCI policy precluded these treatments and allowed only for

///

1  extractions in such situations. Plaintiff alleges that on those occasions, he refused extraction because
2  he did not want to unnecessarily lose his teeth.

3  Plaintiff alleges that by November 30, 2003, the infection in tooth #30 had spread and
4  between the pain and the knowledge that the spreading infection was putting his other teeth at risk,
5  he allowed Dr. Liu to extract tooth #30. Plaintiff alleges that since April 16, 2002, he has suffered
6  from severe mental and physical pain, an inability to eat properly, spreading infection, and teeth
7  degeneration due to the condition of tooth #5, which Plaintiff refuses to allow a TCI dentist to
8  extract.

9  Plaintiff alleges that in early 2003, he filed an administrative appeal, which was denied by
10 Defendant Rinson, the Associate Warden at TCI, pursuant to policy 514.1. Plaintiff then pursued
11 his appeal to the next level of review, where it was denied by Defendant Andrews, Warden of TCI,
12 pursuant to policy 514.1.

13 Plaintiff alleges that by denying his appeal, Defendants Rinson and Andrews acted with
14 deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Plaintiff
15 alleges that Defendants GEO, Calabrese, Kroger, and Johnson were involved in the creation,
16 approval, and/or implementation of policy 514.1 solely as a cost-cutting measure and without regard
17 for the health and safety of inmates, in violation of the Eighth Amendment. Plaintiff alleges that
18 because BOP inmates would be entitled to the treatment he was precluded from receiving at TCI,
19 Defendants have violated his right to equal protection under the Fifth Amendment. Finally, Plaintiff
20 alleges that Defendants GEO and Calabrese's involvement in creating, approving, and/or
21 implementing the policy constitutes intentional infliction of emotional distress, and that their failure
22 to implement policies, guidelines, or procedures to prevent the violation of Plaintiff's Fifth and
23 Eighth Amendment rights constitutes negligence per se.
24 ///
25 ///

3. <u>Undisputed Facts</u>[6]

1. On May 4, 2001, Plaintiff was committed to the custody of the BOP, and on April 5, 2002, Plaintiff was designated to TCI, which is a privately operated by the GEO Corporation under contract with the BOP.

2. On April 10, 2002, TCI dental staff gave Plaintiff his initial dental screening and oral examination. Over the next year, TCI dental staff saw Plaintiff on six separate occasions:

• April 16, 2002 (abscess on tooth #5, stating a "hopeless prognosis" and extraction may be necessary);

• May 2, 2002 (tooth #19 needed re-cementing, extraction of #5 recommended);

• July 19, 2002 (extraction of #5 recommended, but Plaintiff wanted to save #5 so he was informed that he could hire an outside dentist to come to the institution to perform his desired treatment);

• March 31, 2003 (tooth #30 swollen, cracked and abscessed, extraction needed, prescribed antibiotic and pain medication);

• April 3, 2003 (#30 extraction refused but Plaintiff would not sign refusal form, #5 extraction previously refused, Plaintiff inquired about getting a private dentist to come to the institution and about his options in getting extracted teeth replaced upon his release);

• April 17, 2003 (#5 abscess noted, extraction needed, Motrin prescribed).

3. Between April 2003 and August 2003, Plaintiff was seen by TCI dental staff on nine separate occasions:

• April 24, 2003 (Plaintiff placed on dental cleaning wait list and given Motrin);

• May 15, 2003 (abscess on #5 and #30, extraction recommended but refused due to Plaintiff waiting for outside dentist to perform root canals, he was warned about spread of infection and possible health problems and given Motrin);

• May 30, 2003 (#30 abscess, extraction needed, antibiotics prescribed);

---

[6] Plaintiff's amended complaint is verified and shall be treated as an affidavit for purposes of the summary judgment rule where it is based on facts within Plaintiff's personal knowledge of admissible evidence, and not merely on Plaintiff's belief. <u>Lew v. Kona Hospital</u>, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).

    • June 9, 2003 (Plaintiff refused extraction of #30, signed refusal form, wants outside dentist to come in for treatment);

    • July 8, 2003 (pain from #30 abscess, wants medication only, Motrin);

    • July 10, 2003 (requested medical records for outside dentist, scheduled x-ray appointment);

    • July 17, 2003 (took two x-rays for outside dentist consult);

    • July 21, 2003 (scheduled consultation, outside dentist, Dr. Arza, was called on July 18, 2003, but did not want to come to prison facilities to perform treatment, Plaintiff advised to clarify protocol to dentist); and

    • August 11, 2003 (#30 infected, antibiotics and Motrin).

4. Between August 2003 and March 2005, Plaintiff was seen by TCI dental staff or had a scheduled dental appointment on fifteen separate occasions concerning his abscessed teeth and other dental problems related (and unrelated) to his abscessed teeth: November 6, 2003; November 13, 2003; November 19, 2003; November 24, 2003 (failed to show for appointment); November 25, 2003; December 8, 2003; December 30, 2003; February 12, 2004; March 15, 2004; March 26, 2004; June 10, 2004; June 22, 2004; December 1, 2004; December 21, 2004 (Plaintiff 30 minutes late, appointment rescheduled); March 8, 2005.

5. TCI Health Services Policies, including 514.1 Guidelines for Infection Control in Dental Clinics and Dental Laboratories, were reviewed and accepted by the BOP on May 9, 1998.

6. The BOP requires that TCI develop and maintain proper procedures to adequately address the inmates' medical and dental needs. The section on inmate health care in the BOP-TCI Statement of Work provides the following requirements: The contractor shall provide all essential health services while meeting the applicable standards and levels of quality established by the ACA [American Correctional Association] and the designated BOP ambulatory health care accreditation provider, the Joint Commission on Accreditation of Health Care Organizations (JCAHO). In addition, the contractor shall adhere to all applicable Federal, state and local laws and regulations governing the delivery of health services and establish the necessary quality controls to ensure all policies and procedures are designed and implemented in a manner to promote orderly and efficient delivery and

|   |   |
|---|---|
|   | management of health services to the inmate population. . . . The provision of medical services commensurate to the level of care available in the community is an essential component of successful performance under the contract. . . . The contractor shall have written plans and procedures for providing urgent medical, health, mental health and dental services. The plan shall include, but is not limited to the following: (1) 24 hour a day, seven day a week emergency medical, health, mental health and dental care; . . . (10) dental services - routine and emergency; . . . and (16) quality control/peer reviews. |
| 7. | Under the requirements set forth in the Statement of Work, Wackenhut/GeoCorp/TCI drafted Dental Policy 514.1, Guidelines for Infection Control in Dental Clinics and Dental Laboratories. The BOP reviewed and approved Dental Policy 514.1 on May 9, 1998. |
| 8. | On May 19, 2003, Defendant Andrews was involved in preparing a response to Plaintiff's step two administrative remedy which was prepared only after a thorough review of Plaintiff's medical records was made by counselor Dickerson by the health services administrator and the dental department. |
| 9. | Defendant Andrews was informed that the dental treatment requested by Plaintiff was not covered under TCI Policy 514.1 because the root canal was not restorable with any degree of certainty and was informed that an extraction was the only procedure that would afford Plaintiff with 100% recovery. |
| 10. | In 2003, Defendant Rinson was involved in Plaintiff's step one TCI administrative remedy appeal and denied Plaintiff's appeal after consultation with TCI's dental department, after the review of Plaintiff's medical records by TCI's Health Services Department and after consultation with TCI's Health Services Administrator. |
| 11. | Defendant Rinson was informed by Health Services Administrator and the Chief Dentist that extraction of Plaintiff's tooth was the only viable and medically probable treatment that would alleviate his condition. |
| 12. | Defendants Rinson and Andrews were not responsible or involved with the drafting of or implementation of TCI's policies and procedures, nor are they experienced in or have |

///

|   |     |   |
|---|---|---|
| 1 | | received the training necessary to make decisions about appropriate dental treatment for |
| 2 | | inmates. |
| 3 | 13. | Defendants Kroger and Johnson oversee the medical services provided by GEO, to include |
| 4 | | the drafting and implementation of medical policy and procedures for GEO. GEO medical |
| 5 | | policies and procedures are based upon national standards of health care for incarcerated |
| 6 | | individuals. |
| 7 | 14. | Although Defendants Kroger and Johnson are responsible for drafting and implementing |
| 8 | | policies relating to health care, they are not responsible for the immediate, day-to-day, |
| 9 | | individual decisions made for the care and treatment of inmates by dentists, who are acting |
| 10 | | as individual practitioners under guidance by GEO health care policies and procedures. |
| 11 | 15. | Defendants Kroger and Calabrese are employed and reside outside of the State of California. |
| 12 | 16. | Warren H. Liu, D.D.S. was the Chief Dentist whom conducted numerous dental examination |
| 13 | | of Plaintiff. Plaintiff was treated at TCI's dental offices on multiple occasions and dental |
| 14 | | treatment was provided as needed. TCI has a treatment program, an extraction, which is |
| 15 | | currently available to Plaintiff and will provide Plaintiff with relief from all of his alleged |
| 16 | | pain and suffering. |
| 17 | 17. | On April 3, 2003, Dr. Liu informed Plaintiff that under TCI policy he is allowed to obtain |
| 18 | | alternative treatment by another dentist if that dentist is willing to see Plaintiff within the |
| 19 | | facility. On July 18, 2003, Dr. Arza contacted Dr. Liu relating to Plaintiff. Dr. Arza |
| 20 | | informed Dr. Liu that he was contacted by Plaintiff but would not be willing to treat Plaintiff |
| 21 | | at the TCI facility. |

        4.     <u>Discussion</u>

            a.     <u>Eighth Amendment Claim</u>

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate

13

indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Supervisory personnel cannot be held liable in a Bivens action for the actions of their employees under a theory of respondeat superior. Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991). Therefore, no defendant may be held liable for acting with deliberate indifference in violation of the Eighth Amendment unless that defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). The Eighth Amendment does not provide Plaintiff a right to choose between alternate courses of treatment. Rather, to prevail on an Eighth Amendment claim based on a disagreement in treatment, Plaintiff must set forth admissible evidence showing "that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to [his] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted). Despite Plaintiff's assertion to the contrary, this case involves Plaintiff's disagreement with the treatment option he was provided with and Plaintiff's disagreement with a policy governing treatment choices.

Defendants' position is that Plaintiff received thorough, attentive dental care at TCI. Defendants contend that TCI policy does not prohibit medically viable root canals or apioectomies, but rather that Warren H. Liu, D.D.S., the Chief Dentist who conducted numerous dental examinations of Plaintiff, recommended on May 15, 2003, that Plaintiff's tooth number 30 be extracted because it was cracked and had an infectious abscess, and recommended on April 16, 2002, that Plaintiff's tooth number 5 be extracted because Plaintiff had a failing of a previous root canal and an infectious abscess. (Liu Dec., ¶¶5,6,8,11; Johnson Dec. ¶3; Kroger Dec., ¶3.) Defendants contend that Dr. Liu determined extraction is necessary to ensure that Plaintiff has a 100% chance

1 of recovery and that it is a perfectly acceptable course of treatment for a person with such a poor
2 prognosis as Plaintiff. (Liu Dec., ¶8.) Defendants contend that Dr. Liu determined the alternate
3 treatments as requested by Plaintiff, re-treatment of the root canal or apioectomy, have very poor
4 chances of success with limited chances of recovery. (Id.) Defendants contend that TCI has a
5 treatment program, an extraction, which is currently available to Plaintiff and will provide Plaintiff
6 with relief from all of his alleged pain and suffering, but Plaintiff has refused that recommended
7 course of treatment. (Id., ¶¶8, 10.) Defendants contend that the treatment program that is available
8 at TCI is acceptable in the dental community, and re-treatment of Plaintiff's root canal is not a viable
9 procedure because of the way in which his first root canal was performed. (Id., ¶11.) Defendants
10 contend that although an apioectomy would be possible on Plaintiff's tooth, Dr. Liu would not
11 recommend the treatment because Plaintiff's prognosis is so poor and an extraction is the more
12 appropriate treatment. (Id.)

13 Further, on April 3, 2003, Dr. Liu informed Plaintiff that under TCI policy he is allowed to
14 obtain alternative treatment by another dentist if that dentist is willing to see Plaintiff within the
15 facility. (U.F. 21.) On July 18, 2003, Dr. Arza contacted Dr. Liu relating to Plaintiff and informed
16 Dr. Liu that he was contacted by Plaintiff but would not be willing to treat Plaintiff at the TCI
17 facility. (Id.)

18 Turning to Plaintiff's position, Plaintiff contends that TCI has a policy precluding root canals
19 and apiectomies, and that this policy was enacted to cut costs at the expense of inmate health and
20 safety. However, the policy statement submitted by the parties contains no statement that these
21 procedures are precluded, and, with the exception of Dr. Liu's statement discussed in the following
22 paragraph, Plaintiff has submitted no evidence supporting that interpretation of the policy. (Ds' Ex.
23 C, attached to Ex. 1; P's Ex. G.) As a layman, Plaintiff is not qualified to provide an interpretation
24 of the policy's meaning from a medical standpoint.

25 In his declaration, Plaintiff attests that Dr. Liu told him that the policy precludes root canals
26 on back teeth and apiectomies on any teeth regardless of whether these treatments are medically
27 viable options that can save an inmate's teeth, and that the policy was created solely as a cost-cutting
28 measure because extractions are much cheaper to provide. (Brooks Dec., ¶¶12-13.) Even if the

1  Court were to consider these statements as admissions, they are insufficient to raise a triable issue
2  of fact. In order to prevail on his Eighth Amendment claim, Plaintiff must submit evidence showing
3  that the course of treatment chosen was medically unacceptable. Plaintiff has not done so. As a lay
4  witness, Plaintiff is not qualified to opine that a root canal and an apiectomy are the only medically
5  appropriate treatments for his teeth and that extractions are medically unacceptable under the
6  circumstances, and Dr. Liu's alleged statements fall short of demonstrating that the treatment
7  available to Plaintiff under the policy and the treatment offered to Plaintiff by TCI dentists was
8  medically unacceptable under the circumstances. Because there has been no showing that the
9  alternate treatment of a root canal and/or an apiectomy was the only medically acceptable course and
10 that the recommended course of extraction was medically unacceptable, Defendants are entitled to
11 judgment as a matter of law on Plaintiff's Eighth Amendment claims against them.

12         E.      Motion for Summary Adjudication on State Law Claims
13                 1.      IIED Claim

14 Plaintiff alleges tort claims against Defendant GEO for intentional infliction of emotional
15 distress and negligence per se. Under California law, the elements of intentional infliction of
16 emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of
17 causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's
18 suffering severe or extreme emotional distress; and (3) actual and proximate causation of the
19 emotional distress by the defendant's outrageous conduct. Sabow v. United States, 93 F.3d 1445,
20 1454 (9th Cir. 1996) (citing to Christensen v. Superior Court, 54 Cal.3d 868 (1991)) (quotations
21 omitted).

22 Defendants argue that Plaintiff cannot establish the elements of his IIED claim. Defendants
23 contend that policy 514.1 does not prohibit root canals and apiectomies as long as Plaintiff is a
24 candidate for the procedures, which he is not in Dr. Liu's opinion, and there is therefore no conduct
25 at issue that is outrageous. (Ds' Memo., 13:7-15.) Defendants further contend that there was no
26 intent to harm Plaintiff. (Id., 13:19-21.) Plaintiff contends that whether or not policy 514.1
27 precludes root canals and apiectomies is in dispute and that if the policy precludes these options, a
28 ///

trier of fact could conclude that Defendant's conduct was outrageous and in reckless disregard of the probability that Plaintiff would suffer emotional distress. (P's Memo., 25:7-19.)

Plaintiff has not submitted any evidence that the policy was medically unacceptable or otherwise so deficient such that it constitutes extreme and outrageous conduct. Further, the conduct at issue must have been either directed at Plaintiff or in reckless disregard of Plaintiff and the probability that the conduct would cause severe emotional distress. Sabow, F.3d at 1455. There is simply no evidence that Defendant GEO, in allowing the implementation of policy 514.1, acted with the intention to cause severe emotional distress or acted with reckless disregard to the probability that severe emotional distress would be caused. Accordingly, the Court finds that GEO is entitled to summary adjudication on Plaintiff's IIED claim.

2. Negligence Per Se Claim

In his amended complaint, Plaintiff alleges a claim for relief for negligence per se. "[California] Evidence Code section 669 allows proof of a statutory violation to create a presumption of negligence in specified circumstances. It codifies the common law doctrine of negligence per se, pursuant to which statutes and regulations may be used to establish duties and standards of care in negligence actions." Elsner v. Uveges, 22 Cal.Rptr.3d 530, 536-37 (Cal. 2004). In order to create a presumption of negligence, four elements must be met: "(1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Spates v. Dameron Hosp. Assoc., 7 Cal.Rptr.3d 597, 606 (Cal. Ct. App. 2003) (internal quotations and citation omitted). "The first two elements are questions of fact, while the latter of questions of law." Id. "[T]he presumption of negligence concerns the standard of care" rather than the duty of care. California Serv. Station & Automobile Repair Assoc. v. American Home Assurance Co., 73 Cal.Rptr.2d 182, 189 (Cal. Ct. App. 1998).

Defendants argue that GEO is entitled to judgment as a matter of law because Plaintiff cannot establish a violation, as he has not identified a statute, ordinance, or regulation Defendant allegedly

17

violated. (Ds' Memo., 14:20-25.) In addition, Defendants contend that Plaintiff has neither made a claim of negligence nor stated a claim for negligence. (Id.) Plaintiff argues that his amended complaint can be liberally construed as raising a general negligence claim against Defendant, and that he has met the elements because Defendant had a duty to him and breached that duty by allowing the implementation of policy 514.1, which caused his injuries. (P's Memo., 26:18-28:12.)

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002). "[T]he liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Plaintiff's amended complaint neither pled a general negligence claim nor pled the essential elements, thereby arguably placing Defendants on notice as to the existence of a general negligence claim in the amended complaint. Rather, Plaintiff specifically pled tort claims for IIED and negligence per se, thereby giving Defendants notice of those two state law tort claims. (Comp., 1:24-25 & 9:22-10:5.) This is not a situation where Plaintiff's factual allegations were inartfully pled, leading to some uncertainty over the bases of Plaintiff's claims for relief, with the Defendants seeking to take advantage of that inartful pleading by arguing that a claim was not specifically pled. Instead, Plaintiff clearly pled the bases for his state law claims and now, after being placed on notice via Defendants' motion for summary judgment that his negligence per se claim suffers from fatal deficiencies, seeks to include a claim neither actually pled or inferentially pled via factual allegations setting forth the essential elements. Accordingly, Plaintiff shall be held to the claims set forth in his amended complaint.

Turning to the merits of Plaintiff's negligence per se claim, Plaintiff has neither pled nor set forth any evidence that GEO violated a statute, ordinance, or regulation. GEO is therefore entitled to judgment as a matter of law.

F. <u>Fifth Amendment Equal Protection Claim</u>

Finally, in his amended complaint, Plaintiff alleges a claim based on violation of the Equal Protection Clause of the Fifth Amendment. Defendants do not address this claim in their motion.[7] Within forty-five days from the date of service of this order, remaining Defendants Andrews, Rinson, and Johnson shall file a motion for summary judgment addressing this remaining claim.

G. <u>Conclusion</u>

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's surreply, filed January 18, 2006, is STRICKEN from the record;

2. Plaintiff's <u>Bivens</u> claims against Defendant GEO are dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

3. Defendants' motion to dismiss Calabrese and Kroger from this action for lack of personal jurisdiction, filed August 1, 2005, is GRANTED, with prejudice;

4. Defendants' motion for summary adjudication on Plaintiff's Eighth Amendment claim against Defendants Andrews, Rinson, and Johnson, filed August 1, 2005, is GRANTED;

5. Defendants' motion for summary adjudication on Plaintiff's state law tort claims against Defendant GEO is GRANTED; and

6. Defendants Andrews, Rinson, and Johnson shall file a motion for summary judgment on Plaintiff's remaining equal protection claim within **forty-five days (45)** from the date of service of this order.

IT IS SO ORDERED.

**Dated:   February 15, 2006**                              /s/ Anthony W. Ishii
9h0d30                                                                    UNITED STATES DISTRICT JUDGE

---

[7] Defendants did raise this argument in their reply. However, as the parties moving for summary judgment, Defendants must set forth this argument in their moving papers, not in their reply.