1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BERNARD BROOKS, | CASE NO. 1:03-cv-06106-AWI-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| RAYMOND ANDREWS, et al., | (Doc. 125) |
| Defendants. | |
| _____/ | |

I.      Defendants' Motion for Summary Judgment

        A.      Procedural History

        Plaintiff Steven Bernard Brooks ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides for recovery of money damages against federal actors.  This action is proceeding on Plaintiff's amended complaint, filed on April 22, 2004.  (Docs. 30, 46.)  Pursuant to the Court's order filed February 17, 2006, the only claim remaining in this action is against Defendants Andrews, Johnson, and Rinson[1] ("Defendants") for violation of the Equal Protection Clause of the Fifth Amendment.  (Doc. 115.)

        On April 12, 2006, Defendants filed a motion to dismiss or in the alternative for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56.  (Doc. 117.)  Plaintiff filed

_____

[1] Identified as Rison in the amended complaint.

1

1  an opposition on April 28, 2006, and Defendants filed a reply on May 10, 2006.[2]  (Docs. 118-122.)

2  Pursuant to the Court's order of August 23, 2006, Defendants' motion was stricken from the record

3  for failure to comply with Local Rule 56-260(a), with leave to re-file the motion.  (Doc. 124.)

4  Defendants cured the deficiencies and re-filed their motion on August 24, 2006.  (Docs. 125-131.)

5  Plaintiff was provided with the opportunity to file a new opposition, but did not do so, thereby

6  choosing to stand on his opposition filed on April 28, 2006.  (Doc. 124.)

7          B.    Legal Standard

8          Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

9  as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

10  Civ. P. 56(c).  Under summary judgment practice, the moving party

11          [A]lways bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
12          pleadings, depositions, answers to interrogatories, and admissions on
           file, together with the affidavits, if any," which it believes
13          demonstrate the absence of a genuine issue of material fact.

14  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

15  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

16  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

17  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

18  motion, against a party who fails to make a showing sufficient to establish the existence of an

19  element essential to that party's case, and on which that party will bear the burden of proof at trial.

20  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

21  case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

22  should be granted, "so long as whatever is before the district court demonstrates that the standard

23  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

24          If the moving party meets its initial responsibility, the burden then shifts to the opposing

25  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

26

27          [2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
    Court in orders filed on January 14, 2004, and January 10, 2005.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.
28  1988).  (Docs. 9, 52.)

1   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

2   of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

3   required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

4   material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586

5   n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

6   might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

7   U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

8   (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

9   return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

10  (9th Cir. 1987).

11          In the endeavor to establish the existence of a factual dispute, the opposing party need not

12  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

13  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

15  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

16  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

17  amendments).

18          In resolving the summary judgment motion, the Court examines the pleadings, depositions,

19  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).

20  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

21  inferences that may be drawn from the facts placed before the Court must be drawn in favor of the

22  opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655

23  (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

24  party's obligation to produce a factual predicate from which the inference may be drawn.  Richards

25  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

26  Cir. 1987).

27          Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

28  that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

C.     <u>Undisputed Material Facts</u>

1.     On May 4, 2001, Plaintiff was committed to the custody of the Bureau of Prisons (BOP), and on April 5, 2002, Plaintiff was designated to Taft Correctional Institution (TCI), which is privately operated by the GEO Corporation under contract with the BOP.

2.     TCI Health Services Policies, including 514.1 Guidelines for Infection Control in Dental Clinics and Dental Laboratories, were reviewed and accepted by the BOP on May 9, 1998.

3.     The BOP requires that TCI develop and maintain proper procedures to adequately address the inmates' medical and dental needs.  The section on inmate health care in the BOP-TCI Statement of Work provides the following requirements:  The contractor shall provide all essential health services while meeting the applicable standards and levels of quality established by the ACA [American Correctional Association] and the designated BOP ambulatory health care accreditation provider, the Joint Commission on Accreditation of Health Care Organizations (JCAHO).   In addition, the contractor shall adhere to all applicable Federal, state and local laws and regulations governing the delivery of health services and establish the necessary quality controls to ensure all policies and procedures are designed and implemented in a manner to promote orderly and efficient delivery and management of health services to the inmate population. . . . The provision of medical services commensurate to the level of care available in the community is an essential component of successful performance under the contract. . . . The contractor shall have written plans and procedures for providing urgent medical, health, mental health and dental services. The plan shall include, but is not limited to the following: (1) 24 hour a day, seven day a week emergency medical, health, mental health and dental care; . . . (10) dental services - routine and emergency; . . . and (16) quality control/peer reviews.

4.     Under the requirements set forth in the Statement of Work, Wackenhut/GeoCorp/TCI drafted Dental Policy 514.1, Guidelines for Infection Control in Dental Clinics and Dental Laboratories.  The BOP reviewed and approved Dental Policy 514.1 on May 9, 1998.

4

5.   On April 21, 2003, Plaintiff filed his Step-One Administrative Remedy at TCI claiming an ongoing violation of his "right to dental care as mandated by BOP Policy and the U.S. Constitution, i.e., a root canal on a salvageable back tooth [#30] and oral surgery on a front tooth [#5]."

6.   Defendant Rinson, the TCI Associate Warden of Programs, denied the step-one remedy request on May 9, 2003, stating that after investigation and consultation with the TCI Health Services Administrator, Plaintiff's requested treatment was denied under TCI Policy 514.1.

7.   Defendant Rinson denied Plaintiff's appeal after consultation with TCI's dental department, after the review of Plaintiff's medical records by TCI's Health Services Department and after consultation with TCI's Health Services Administrator.

8.   On May 12, 2003, Plaintiff filed his Step-Two Administrative Remedy at TCI claiming that TCI Policy 514.1 was unconstitutional, and requested that Defendant Andrews, the Warden, issue a memorandum denouncing the policy and re-negotiate TCI's contract with the BOP to "allow for [Wackenhut/GeoCORP/TCI] to provide constitutionally mandated dental care" to TCI inmates.

9.   On May 19, 2003, Defendant Andrews was involved in preparing a response to Plaintiff's step-two administrative remedy, which was prepared only after a thorough review of Plaintiff's medical records was made.

10.  Defendants Rinson and Andrews were not responsible or involved with the drafting of or implementation of TCI's policies and procedures, nor are they experienced in or have received the training necessary to make decisions about appropriate dental treatment for inmates.

11.  Defendant Johnson oversees the medical services provided by GEO, to include the drafting and implementation of medical policy and procedures for GEO.  GEO medical policies and procedures are based upon national standards of health care for incarcerated individuals.

12.  Although Defendant Johnson is responsible for drafting and implementing policies relating to health care, he is not responsible for the immediate, day-to-day, individual decisions made

///

1    for the care and treatment of inmates by dentists, who are acting as individual practitioners

2    under guidance by GEO health care policies and procedures.

3         D.    Discussion[3]

4         Plaintiff is an inmate housed at TCI in Taft, California. (Undisputed Fact 1.)  In his amended

5    complaint, Plaintiff alleges that pursuant to BOP Program Statement 6005.5, BOP-housed inmates

6    receive root canals and apioectomies on all treatable/salvageable teeth.  (Amend. Comp., ¶16.)

7    Plaintiff alleges that pursuant to GEO/TCI policy 514.1, root canals on back teeth and apioectomies

8    on any teeth are precluded and only extractions are allowed, regardless of the salvageability of the

9    teeth.  (Id.)  Plaintiff alleges the denial of his requests for a root canal and an apioectomy violated

10   the Equal Protection Clause of the Fifth Amendment because Defendant knew that BOP Program

11   Statement 6005.5 mandated similarly situated BOP inmates receive those treatments.  (Id., ¶38.)

12        Defendants argue, in relevant part, that Plaintiff is not similarly situated to inmates housed

13   in BOP facilities, and that there is no evidence they acted with intentional discrimination toward

14   Plaintiff.

15        "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated

16   should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing

17   Plyler v. Doe, 457 U.S. 202, 216 (1982)).  "'To state a claim . . . for a violation of the Equal

18   Protection Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to

19   discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los

20   Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th

21   Cir. 1998)).  "Intentional discrimination means that a defendant acted at least in part *because of* a

22   plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting

23   Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original).  "Where

24   the challenged governmental policy is 'facially neural,' proof of its disproportionate impact on an

25   identifiable group can satisfy the intent requirement only if it tends to show that some invidious or

26

27        [3] Plaintiff's amended complaint is verified and shall be treated as an affidavit for purposes of the summary
     judgment rule where it is based on facts within Plaintiff's personal knowledge of admissible evidence, and not
28   merely on Plaintiff's belief.  Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).

1   discriminatory purpose underlies the policy." Lee, 250 F.3d at 687 (citing Village of Arlington

2   Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (264-66) (1977) (internal citations omitted)).

3   "The mere fact that [a] facially neutral polic[y] had a foreseeably disproportionate impact on an

4   identifiable group does not mean that [it] violated the Equal Protection Clause." Id. at 687.

5       Defendants were granted summary adjudication on Plaintiff's Eighth Amendment claims.

6   Thus, the treatment of Plaintiff's dental needs, whether TCI's policy did or did not meet community

7   standards of care, and/or whether the TCI policy violated the Eighth Amendment are not at issue.

8   Left at issue is solely the question of whether the TCI policy is discriminatory, in violation of the

9   Equal Protection Clause.

10      TCI is privately operated by GEO Corporation, under contract with the BOP.  (U.F. 1.)

11  Defendant Andrews was the Warden at TCI, and Defendant Rinson was the Associate Warden at

12  TCI.  (Amend. Comp., ¶¶7, 9, 10; U.F. 6, 8.)  Defendants were involved in responding to Plaintiff's

13  Administrative Remedy Appeals concerning his desire for a root canal and an apicectomy.  (U.F. 6,

14  8.)  Defendant Johnson was the Medical Director for GEO and created, implemented or approved

15  the policies governing medical care. (U.F. 12.)

16      Defendants argue that TCI inmates and BOP inmates are not similarly situated for the

17  purpose of the Equal Protection Clause.   Indeed, the record is devoid of any evidence that

18  Defendants treated Plaintiff or a group to which Plaintiff belong differently than they treated other

19  similarly situated inmates.  The allegation that BOP inmates have different dental care treatment

20  options than TCI inmates does not make this showing with respect to a claim against TCI employees,

21  despite Plaintiff's attempt to argue otherwise.  This action is not a vehicle by which Plaintiff may

22  make generalized accusations regarding policies he does not agree with.   Rather, in this action

23  Plaintiff is attempting to impose liability on Defendants Andrews, Rinson, and Johnson for violating

24  his rights under the Equal Protection Clause due to their involvement in creating or enforcing an

25  allegedly discriminatory policy.

26      Plaintiff's citation to Bishop v. Morgan, 676 F.Supp. 416 (D.R.I. 1987) is of no assistance

27  him.  The Bishop case involved Rhode Island inmates housed in-state versus Rhode Island inmates

28  housed out-of-state, and at issue was the right of the out-of-state inmates to return to Rhode Island

to attend their parole hearings in person, a benefit enjoyed by in-state inmates but denied to out-of-state inmates.   The equal protection claim was brought against the Rhode Island Director of Corrections and the Chairperson of the Rhode Island Parole Board.   The district court stated that "the mere fact that an inmate is being housed in a different facility does not mean that he is no longer a Rhode Island state prison subject to the jurisdiction of the Rhode Island Department of Corrections along with in-state prisoners." Bishop, 676 F.Supp. at 421.   The court noted that "the fact that both in-state and out-of-state inmates are reviewed for parole by the Rhode Island Parole Board vividly illustrates that both are similarly situated for equal protection purposes." Id.

Plaintiff's argument that he is similarly situated to inmates housed in federal prisons is not supported by Bishop.   As noted by the court in Bishop, "the equal treatment guaranteed by the Equal Protection Clause is a comparative right; that is, one's entitlement to something he does not have depends in large measure upon whether he stands in a position similar to one who already receives it." Id.   "The [C]onstitution 'does not require things which are different in fact to be treated as though they were the same.'" Id. (quoting Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 1499 (1966). Rather, "[i]t 'requires only that persons *similarly situated* receive like treatment at the hands of the sovereign.'" Id. (quoting R.I. Ch. of Nat. W. Pol. C. v. R.I. Lottery, 609 F.Supp 1403, 1417 (D.R.I. 1985) (emphasis in original).

Plaintiff, a federal prisoner, is not proceeding on a claim against the BOP or its personnel arising from the BOP's failure to provide some benefit to federal inmates housed in private prisons that it provides to federal inmates housed in its own federal prisons.   Plaintiff is proceeding against TCI/GEO employees and thus, the "sovereigns" in this case are TCI employees, not the BOP, and Plaintiff, as an inmate housed at a private prison, is not similarly situated to inmates housed in federal prisons for the purpose of determining if TCI's policy is discriminatory.   There is simply no evidence that similarly situated inmates are receiving unlike treatment at the hands of Defendants, and unlike in Bishop, where the state was treating different groups subject to its jurisdiction differently, whether or not the BOP is treating different groups subject to its jurisdiction differently is not at issue.   The failure to make a showing on this element is fatal to Plaintiff's claim.   However, the Court will also address the necessary element of discriminatory purpose.

Defendants argue that there is no evidence that they personally took discriminatory action against Plaintiff.  Defendants Rinson and Andrews denied Plaintiff's Administrative Remedy at Steps One and Two, respectively, and Defendant Johnson oversees the medical services provided by GEO, which includes the drafting and implementation of medical policies and procedures.  (U.F. 6-12.)  Plaintiff does not allege with any specificity that Defendants intentionally discriminated against him, and does not allege any facts from which such an inference may be drawn.  Plaintiff's argument that discriminatory intent can be inferred from different treatment, and he has met his burden of demonstrating the requisite discriminatory intent because TCI Policy 514.1 and BOP Policy 6005 provide for different treatment is without merit.

Even assuming that the TCI policy differs from the BOP policy and the BOP policy is more favorable to inmates, there is no evidence that Defendants Rinson and Andrews did anything more than deny Plaintiff's Administrative Remedy.[4]  There is simply no evidence from which an inference may be drawn that Defendants Rinson and Andrews were responsible for the policy or that in undertaking some involvement with creating or enforcing the policy, Defendants acted with an "invidious or discriminatory purpose," Lee, 250 F.3d at 686, by choosing that "particular course of action at least in part because of . . . its adverse effect . . ." on a group of inmates at TCI, id. at 687 (internal quotations and citations omitted).  Although Defendant Johnson was responsible for overseeing the creation and implementation of policies such as that at issue, there is no evidence from which an inference may be drawn that Defendant acted with invidious discrimination against a group of inmates at TCI.  Thus, in addition to failing to show that Defendants treated him differently than other similarly situated inmates, Plaintiff fails to meet his burden of demonstrating

---

[4] Plaintiff contends that the TCI policy precludes root canals and apioectomies while the BOP policy provides them as a matter of right, and Defendants contend that the TCI policy does not preclude such procedures. The TCI policy itself does not state that such procedures are precluded.  Given that the policy does not state that root canals and apioectomies are precluded, Plaintiff is not qualified to render an interpretation of what the policy includes or excludes from a dental treatment/procedure standpoint.  Likewise, the BOP policy, which was not submitted by Plaintiff in its entirety, does not state that root canals and apioectomies as are afforded as a matter of right.  (Pl. Ex. B, erroneously identified as Ex. C by Plaintiff in his opposition.)  In his declaration, Plaintiff attests that he was told by John Hienz and Dr. Liu, both TCI employees, that the BOP and TCI policies differ, that the BOP policy entitles inmates to root canals and apioectomies as a matter of right if medically viable, and that the TCI policy does not cover the root canal and apioectomy Plaintiff was requesting.  For the purpose of this Findings and Recommendations only, the Court will assume for the sake of argument that these statements are admissible as admissions.

that he was intentionally discriminated against by Defendants.  Defendants are therefore entitled to summary judgment.

### E.   Conclusion

For the foregoing reasons, Plaintiff's equal protection claim against Defendants based on TCI policy 514.1 fails as a matter of law and Defendants are entitled to summary judgment.  Accordingly, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed August 29, 2006, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:   January 9, 2007**                          _/s/ **Sandra M. Snyder**_
icido3                                              UNITED STATES MAGISTRATE JUDGE